**UNITED STATES of America ex rel. Thomas KLING, Relator-Appellant,**

v.

**J. E. LaVALLEE, Warden of Clinton Prison, Dannemora, New York, Respondent.**

**No. 340, Docket 27053.**

United States Court of Appeals Second Circuit.

Argued June 14, 1962.

Decided July 11, 1962.

John Dwight Evans, Jr., New York City (The Legal Aid Society, Anthony F. Marra, New York City, on the brief), for relator-appellant.

Samuel A. Hirshowitz, First Asst. Atty. Gen., Gretchen White Oberman, Asst. Atty. Gen., of New York (Louis J. Lefkowitz, Atty. Gen., of New York), for respondent-appellee.

Before FRIENDLY, KAUFMAN and HAYS, Circuit Judges.

KAUFMAN, Circuit Judge.

Thomas Kling was indicted for a number of crimes arising out of an armed robbery of the Sunnyside, Long Island branch of the Manufacturers Trust Company on March 9, 1950. Kling's counsel, appointed by the County Court of Queens County, made a timely motion for a severance of Kling's trial from that of his well publicized co-defendant William ("Willie") Sutton, on the ground that Kling would suffer prejudice from Sut-

ton's notoriety and would thus be deprived of a fair and impartial trial. The motion was denied. Kling then was tried with Sutton; and on April 1, 1952, a jury found Kling guilty of (a) burglary, third degree, (b) robbery, first degree, (c) grand larceny, first degree, and (d) assault, second degree. The trial judge, Hon. Peter T. Farrell, sentenced Kling as a fourth felony offender to a term of 30 years to life imprisonment on each of the four counts, the sentences to run concurrently. Kling did not appeal from these convictions, but he did secure a resentencing as a third felony offender. The revised sentence was for a term of 20 to 60 years on each count of the indictment, to be served concurrently.

Meanwhile, in a related proceeding in the Court of General Sessions of the County of New York, Kling pleaded guilty to a charge of carrying a concealed and loaded weapon. Originally sentenced to a term of 15 years to life imprisonment as a fourth felony offender, this sentence was also reduced to a period of 7 to 14 years on motion made to the trial court. No appeal was taken from the conviction, and no subsequent challenge to its validity has been made.

The complex history of Kling's post-trial efforts to relieve him of the Queens County conviction is interesting. In February, 1958, Kling moved in the Queens County Court to set aside the convictions obtained against him six years earlier as a result of his trial with Sutton. Kling's petition, which was in the nature of a writ of error *coram nobis,* alleged that he had been prevented from appealing the denial of the pre-trial motion for severance and the judgment of conviction, because of the ineptitude of his court-appointed counsel. Kling also alleged that he had been deprived of due process in violation of the 14th Amendment to the Constitution, because the prosecution knowingly used perjured testimony against him, and because it suppressed evidence which tended to establish his innocence. The motion was denied by Judge Farrell without a hearing on April 2, 1958.

Kling filed a notice of appeal from this denial, and sought leave to proceed as a poor person in the Appellate Division of the New York Supreme Court, Second Department. The application was opposed by the District Attorney, not on the ground that the allegations of poverty were untrue, but on the asserted lack of merit in the appeal. On December 15, 1958, the Appellate Division denied the motion with a brief order. People v. Kling, 11 A.D.2d 917, 206 N.Y.S.2d 1019 (2nd Dept. 1958). When that court also denied a motion to reargue the application on May 18, 1959, People v. Kling, supra, Kling prepared a *pro se* petition for certiorari to the Supreme Court of the United States, asking for review of the denial of his *coram nobis* motion and the Appellate Division's denial of his application for permission to proceed as a poor person. See U. S. ex rel. Marcial v. Fay, 247 F.2d 662 (2d Cir. 1957), cert. denied, 355 U.S. 915, 78 S.Ct. 342, 2 L.Ed.2d 274 (1958). After calling for a response from the District Attorney for Queens County in connection with Kling's allegation of suppression of evidence, the Supreme Court denied the petition. Kling v. New York, 361 U.S. 935, 80 S.Ct. 376, 4 L.Ed.2d 356 (1960). Meanwhile, the Appellate Division, on motion of the District Attorney, dismissed Kling's appeal to that court. People v. Kling, supra.

Kling then brought the instant proceeding by filing a handwritten petition for a writ of habeas corpus in the United States District Court for the Northern District of New York, pursuant to 28 U.S.C. § 2254. He renewed the contentions raised previously in the state *coram nobis* proceedings, and also alleged (as he had in the petition for certiorari) that the Appellate Division deprived him of due process and equal protection under the 14th Amendment by denying his ap-

plication for permission to appeal as a poor person from Judge Farrell's decision on the *coram nobis* motion. The District Court, on the basis of affidavits and the record of the *coram nobis* proceedings, dismissed the petition for habeas corpus. The court's opinion is reported in 188 F.Supp. 470 (N.D.N.Y.1960).

■■ This appeal from the District Court's order raises a number of questions for decision. Kling contends, among other things, that the lower court's failure to hold a hearing on the merits of his claims at which he could offer evidence to substantiate his allegations was reversible error. We agree with appellant that there was nothing in the record before Judge Foley which conclusively demonstrated that Kling's allegations relating to the prosecution's use of perjured testimony or its suppression of evidence were wholly without merit; and those allegations, when viewed together with the affidavits produced in support of the petition, certainly were not frivolous. Although, on the facts before us, Kling's showing did not approach that in U. S. ex rel. Almeida v. Baldi, 195 F.2d 815, 33 A.L.R.2d 1407 (3d Cir.), cert. denied, 345 U.S. 904, 73 S.Ct. 639, 97 L.Ed. 1341 (1952), or U. S. ex rel. Thompson v. Dye, 221 F.2d 763 (3d Cir. 1955), both cited with approval in Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1955), those were cases in which hearings had been held; Kling asserted enough to entitle him to one. It follows, therefore, that if this were the only question on appeal, we would be compelled to reverse the decision below and to remand for a hearing. But it is not, for respondent-appellee also argues that Kling's petition is premature,[1] because he is now serving under an admittedly valid sentence imposed in New York County for the crime of carrying

---

1. This Court originally denied Kling's application for a certificate of probable cause, see 28 U.S.C. § 2254, with an order stating: "Motion denied without prejudice to a renewed application at such time as petitioner is no longer serving the sentence not presently being attacked." May 25, 1961. However, on petition for rehearing, the Court recalled its mandate and granted the application on June 25, 1961. At that time permission was also granted for leave to appeal *in forma pauperis*, 28 U.S.C. § 1915; and counsel was assigned to assist Kling in the preparation of his appeal.

a concealed and loaded weapon. See McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934). However, we do not find it necessary to decide the merits of that issue, for we hold that Kling has not yet exhausted available state remedies—a prerequisite to relief under section 2254.

Since June 22, 1959, when Kling's appeal to the Appellate Division was dismissed, the New York Court of Appeals has held that,

"The right to appeal requires a review of the merits upon appeal and is not satisfied by a mere consideration of those merits upon a submission of affidavits on' an application for leave to have the appeal heard on the original papers." People v. Borum, 8 N.Y.2d 177, 203 N.Y.S.2d 84, 168 N.E.2d 527 (1960).

See also People v. Fish, 9 N.Y.2d 695, 212 N.Y.S.2d 753, 173 N.E.2d 678 (1961); People v. Garcia, 8 N.Y.2d 1143, 209 N.Y.S.2d 827, 171 N.E.2d 903 (1960). As a result of these decisions, we are informed by the Attorney General of New York, the Appellate Division, Second Department, has granted all motions to vacate its previous orders dismissing appeals which were entered after the appellant had first moved unsuccessfully for leave to appeal as a poor person. See e. g., People v. Abair, 13 A.D.2d 802, 218 N.Y.S.2d 498 (2d Dept. 1961) vacating 12 A.D.2d 737, 214 N.Y.S.2d 1020 (1960); People v. De Pina, 13 A.D.2d 692, 215 N.Y.S.2d 449 (2nd Dept. 1961) vacating order of dismissal entered March 9, 1959; People v. Horty, 13 A.D.2d 831, 217 N.Y.S.2d 549 (2nd Dept. 1961) vacating order of dismissal entered March 9, 1959; People v. Johnson, 13 A.D.2d 831, 218 N.Y.S.2d 464 (2nd Dept. 1961) vacating order of dismissal entered April 4, 1960; People v. Lund, 13 A.D.2d 692, 215 N.Y.S.2d 451 (2nd Dept. 1961) vacating order of dismissal entered January 10, 1955; People v. Messina, 13 A.D.2d 831, 217 N.Y.S.2d 547 (2nd Dept. 1961) vacating order of dismissal entered March 10, 1958; People v. Williams, 13 A.D.2d 693, 215 N.Y.S.2d 715 (2nd Dept. 1961) vacating 12 A.D.2d 660, 210 N.Y.S.2d 817 (1960).

Since there is no time limit on motions to vacate a dismissal of an appeal by the Appellate Division, it is apparent that Kling may now seek this relief. Furthermore, in view of the cited cases, it seems clear that this relief will be granted and that Kling will thereby secure a review of the denial of his *coram nobis* motion. The desirability of pursuing this remedy is manifest. The New York appellate courts quite properly will be given an opportunity to examine Kling's contentions; and, if the Appellate Division decides that Judge Farrell erred, Kling will be given an opportunity to present evidence in *coram nobis* proceedings in support of his allegations. If he proves his claim that court-appointed counsel deprived him of his right to appeal, there is every reason to believe that he will be given another opportunity to perfect the appeal from his conviction, despite the lapse of ten years. See People v. Hairston, 10 N.Y.2d 92, 217 N.Y.S.2d 77, 176 N.E.2d 90 (1961).

In any event, as long as this remedy is available, we believe Kling should not pursue federal habeas corpus. This is not an exercise in futility and frustration. It is a recognition of the principle that "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation * * *" Darr v. Burford, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950). See U. S. ex rel. Buckley v. Wilkins, 2d Cir., June 15, 1962, and cases cited therein. Therefore, we hold that Kling has failed to exhaust his available state remedies within the meaning of 28 U.S.C. § 2254, and that his petition must be dismissed for that reason. Cf. U. S. ex rel. Allen v. Murphy, 295 F.2d 385, 386 (2d Cir. 1961).

We wish to express our thanks to the Legal Aid Society, Anthony F. Marra, and John Dwight Evans, Jr., for the

extensive preparation undertaken in connection with this appeal.

Affirmed.

FRIENDLY, Circuit Judge (concurring).

Although agreeing with my brothers' disposition of this appeal, I would not wish to be committed to a rule that when a state prisoner has exhausted all remedies the state had made available to him up to the date when he sought Federal habeas corpus,[1] he must always be sent back on another journey through the state courts if the state, commendably, enlarges its post-conviction remedies thereafter, as New York did here by the decision in People v. Borum, 8 N.Y.2d 177, 203 N.Y.S.2d 84, 168 N.E.2d 527 (1960), rendered shortly after Kling's petition was filed. At least on a literal reading, the first alternative of 28 U.S.C. § 2254 is satisfied by one exhaustion; always to require a second, not to speak of a third or a fourth, might well invite the reproach that it is the prisoner rather than the state remedy that is being exhausted. I do not read Walker v. Ragen, 338 U.S. 833, 70 S.Ct. 37, 94 L.Ed. 507 (1949), and Marks v. Ragen, 339 U.S. 926, 70 S.Ct. 613, 94 L.Ed. 1347 (1950), as going so far. See my dissent from the denial of a certificate of probable cause and leave to appeal *in forma pauperis* in United States ex rel. Buckley v. Wilkins, decided June 15, 1962.

However, sound judgment may sometimes dictate that a Federal habeas corpus petitioner who has exhausted every state remedy previously available should be required also to take advantage of an expanded one the state has later provided. This is such a case. Here Kling had not succeeded in proceeding on the merits in the state courts beyond the first level, and the broadened remedy was made available only six months after his first exhaustion had been completed by the denial of certiorari, 361 U.S. 935, 80 S.Ct. 376, 4 L.Ed.2d 356 (1960), and a fortnight after his habeas corpus petition was filed. Moreover, here we do not have a prisoner who will be entitled to his liberty even if he prevails in Federal habeas corpus and then in a new criminal trial (if the state decides to conduct one); Kling will not be entitled to be set free until 1966, unless, after success on his part, first in Federal habeas corpus and then on a new trial, the New York parole board should intervene in his favor. Indeed, I entertain the most serious doubt whether Federal habeas corpus now lies at all. Although the distinction of Mc-Nally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934) and Holiday v. Johnston, 313 U.S. 342, 349, 61 S.Ct. 1015, 85 L.Ed. 1392 (1941), cf. Ex parte Hull, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941), made by assigned counsel on the basis that in McNally and Holiday the questioned sentence was consecutive to, rather than concurrent with and longer than, the admittedly valid one, is ingenious, it seems to me of questionable validity in view of the identity of the practical results sought by McNally, Holiday and Kling and the dubious policy of employing the writ and possibly forcing a state to conduct (or forego) a new criminal trial, where the only immediate result will be to enable the prisoner to present to a state parole board an application which the Federal constitution gives the board complete freedom to deny[2]— Federal habeas corpus is not the remedy for every ill to which flesh is heir. This is a case of cases in which it is best that the state courts have a full look before the United States intervenes.

1. By putting the issue in this manner, I do not mean to intimate that I would reach a different result if the new state remedy was born after the first exhaustion and before the filing of the Federal habeas corpus petition; this case presents the issue in the form more favorable to the prisoner, hence I state it that way.

2. I recognize that a collateral result would be an earlier opening of the prison gates after the valid sentence has been served.